# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 08-376 (JMR/JJK) |
| Plaintiff, | |
| v. | |
| Michael Ryan Martines, also known as Michael Ryan Martinez, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Leshia M. Lee-Dixon, Esq., Assistant United States Attorney, counsel for Plaintiff.

Lyonel Norris, Esq., Assistant Federal Defender, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before this Court on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 11), and Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 12). This Court held a hearing on the motions on March 3, 2009.[1] The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the

---

[1] The Court issued an Order on motions dated March 3, 2009, taking Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 11), and Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 12), under advisement for submission to the District Court on Report and Recommendation. (Doc. No. 25.)

reasons stated below, this Court recommends that Defendant's motions be denied.

## BACKGROUND

Defendant's motions stem from two search warrants obtained by the Mound City Police Department. These search warrants were for Defendant's home and the vehicle that he allegedly purchased using the identification information of the victim.

On February 6, 2008, Hennepin County District Court Judge E. Anne McKinsey issued a warrant to search a specific location in Mound, described as "a single family dwelling with an attached garage," and the motor vehicle described as "MN License #XXN-061, Vin [#XXXXXXXXXXXX1367], a 2008 Black Cadillac Escalade."  (Hearing Ex. No. 1.)  The supporting affidavit specified that the affiant had learned from a patrol officer that Defendant had given this same referenced address in Mound as the place where he was residing, and that the affiant verified through the records department that Defendant uses this address as his place of residence.  The search warrant identified the objects of the warrant as:

> Any and all legal documents pertaining to: Progressive Insurance, policy [#XXXXX831-1], and/or in [the victim's] name; Two Pilot certificates in [the victim's] name, one commercial, one instructor; Two Etna Insurance cards in [the victim's] name; Financial documents pertaining to [the victim]- Wells Fargo Savings Account [#XXXXXX9384], Wells Fargo Savings Account [#XXXXXX1495], Wells Fargo Checking Account [#XXXXXX9884]; Purchase agreements, vehicle payment receipts for MN License #XXN-061, Vin [#XXXXXXXXXXXX1367], a Black Cadillac Escalade; a

2

> Quicksilver tri-fold wallet, cloth with Velcro close, tan with a brown border; and any and all paperwork pertaining to [the victim], DOB [XX-XX-1984]; Financial documents pertaining to Michael Ryan Martines, DOB [XX-XX-1984], to include but not limited to- Westconsin Credit Union Checking Account [#XXXXXX8848], US Bank Debit Account [#XXXXXXXXXXXX4279].

(Hearing Ex. No. 1.)

Judge McKinsey issued the warrant on the basis of probable cause contained in the Application for Search Warrant and Supporting Affidavit of Detective Jami Wittke (the "February 6, 2008 Affidavit"), including information relayed from [the victim]. This information included the following: (1) his wallet had been stolen; (2) his credit report indicated that a loan had been taken out in his name through GMAC for the amount of $44,000; (3) Progressive Insurance sent him a letter verifying that a 2008 Cadillac Escalade (which he did not own), Vin [#XXXXXXXXXXXX1367] was added to his insurance policy; (4) there were fraudulent withdrawals on his savings account; (5) there were fraudulent withdrawals on his newly-opened checking account; (6) some of the fraudulent withdrawals were occurring at the Mound Branch of Wells Fargo; and (7) the victim had notified that bank. The February 6, 2008 Affidavit also included information that on February 5, 2008, a fraudulent transaction occurred at the Wells Fargo in Mound whereby someone representing to be the victim asked to deposit a $5000 check into the victim's account and then withdrew $3000 in $100 bills, and that the male suspect left in a black Cadillac Escalade, License #XXN-061. The February 6, 2008 Affidavit states that the vehicle and suspect were

3

stopped, that the suspect was identified as Defendant, and that Defendant had in his possession the victim's MN Drivers License, the victim's social security card, and $3000 cash, all in $100 bills.

On February 6, 2008, Detective Wittke searched Defendant's residence and the black Cadillac pursuant to the warrant. During the course of the search of Defendant's residence, several items referred to in the warrant were located, including a Best Buy receipt dated December 6, 2007, for a total amount of $1,912.15. The items shown on the receipt as being purchased were: (1) a 50" Plasma 720P HDTV; (2) 8 feet of black cable for TV hook-up; (3) a Pirates of the Caribbean DVD movie; (4) a wireless controller for a Playstation 3 game unit; (5) a Guitar Hero video game along with guitar; (6) a Playstation 3 game unit along with a Spiderman 3 DVD movie; (7) a Warhawk video game; and (8) a Madden NFL 08 video game.

Based on all of the above, on February 14, 2008, Detective Wittke submitted a second application and supporting affidavit for a search warrant (the "February 14, 2008 Affidavit") to search Defendant's residence again. The search warrant identified the objects of the warrant as follows:

> Best Buy credit card [#XXXXXXXXXXXX0650] in the name of [the victim], or any documents regarding that credit card; any Reward Zone documents regarding a program offered by Best Buy in [the victim's] name; 50" Plasma 720P HDTV; 8 feet black cable for TV hook-up; Pirates of the Caribbean DVD movie; wireless controller for a Playstation 3 game unit; Guitar Hero video game along with guitar; Playstation 3 game unit along with Spiderman 3 DVD movie; Warhawk video game; Madden NFL 08 video game; laptop computer belonging to Michael Ryan Martines and any thumb drives

4

> or external memories including software, discs, or other storage media; Sprint HTC phone.

(Hearing Ex. No. 2.)

On February 14, 2008, Hennepin County District Court Judge Kevin S. Burke issued this second warrant on the basis of probable cause contained in the February 14, 2008 Affidavit, which included all of the same information cited in Wittke's earlier February 6, 2008 Affidavit, along with some additional information learned through and since the execution of the February 6, 2008 search warrant. The additional information included reference to the Best Buy receipt, Defendant's roommate's account that Defendant had recently purchased the TV and Playstation to give to the homeowner as rent, and the roommate's account that Defendant recently purchased a laptop computer, which was in the basement living room along with the Plasma TV and Playstation 3. Detective Wittke also stated that she had obtained a copy of [the victim's] credit history and observed that a Best Buy credit card was opened in December 2007 and had an accrued balance of $1,917. In addition, Wittke stated that she learned from the homeowner that sometime in October or November, a package arrived addressed to both Defendant and to the victim, with a new, black HTC cell phone inside. The homeowner stated that this was the same phone that Defendant uses. In the February 14, 2008 Affidavit, Wittke reported that when she arrested Defendant on February 5, 2008, a black, Sprint HTC cell phone was in his possession.

On February 15, 2008, Detective Wittke executed the second search warrant at Defendant's residence.  During the search of Defendant's residence, the following were found, among other things: (1) a Dell Inspiron laptop; (2) a HTC Sprint cell phone; (3) a Pirates of the Caribbean DVD movie; (4) a RockBand Playstation 3 videogame; (5) a Spiderman 3 DVD; (6) a Madden 08 video game; (7) a Playstation 3; (8) a wireless controller for Playstation 3; and (9) a 50" Plasma HP HDTV.

Defendant was subsequently indicted for Social Security Fraud in violation of Title 18, United States Code, Section 408(a)(7)(B); three counts of Aggravated Identity Theft in violation of Title 18, United States Code, Section 1028A; Access Device Fraud in violation of Title 18, United States Code, Sections 1029(a)(2) and (c)(1)(A); and Bank Fraud in violation of Title 18, United States Code, Section 1344.

## DISCUSSION

Defendant challenges the search warrants issued in this case based upon a lack of probable cause on the four corners of the supporting affidavits.  Based on this challenge, Defendant moves to suppress the physical evidence seized from Defendant's residence and from the black Escalade.

Searches conducted pursuant to a warrant are reviewed to determine whether the information in the warrant application and supporting affidavit provided probable cause for the search.  *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the totality of the circumstances, a

reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 236). When determining whether probable cause exists, a court does not evaluate each piece of information independently; rather, it considers all of the facts for their cumulative meaning. *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002). The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004) ("In issuing a warrant, the judge makes a practical, common-sense decision whether, considering all the circumstances, a reasonable person would have reason to suspect evidence would be discovered.") (quotations omitted).

In reviewing the decision of the issuing court, this Court must ensure that the issuing court "'had a substantial basis for . . . conclud[ing] that probable cause exists.'" *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238-39). Since reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v.*

7

*Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

Upon reviewing Detective Wittke's two Applications for Search Warrants and Supporting Affidavits in their entirety, this Court concludes that the evidence seized pursuant to the warrants to search the specific location in Mound described as "a single family dwelling with an attached garage," and the motor vehicle described as "MN License #XXN-061, Vin [#XXXXXXXXXXXXX1367], a 2008 Black Cadillac Escalade" (Hearing Exs. No. 1, 2), was not obtained in violation of Defendant's constitutional rights.  The warrants issued on February 6 and 14, 2008, were based on sufficient probable cause as stated in the Affidavits of Detective Wittke and as determined by Hennepin County District Court Judges McKinsey and Burke.[2]  The warrants properly and sufficiently identified the

---

[2]  Even if probable cause did not exist, there were facially valid warrants and the good faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), would have to be considered.  "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008).  "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted).  "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alterations in original) (quotations omitted).  Here, based on the limited record before the Court, this Court concludes that the good-faith exception would apply.  There is no evidence to suggest that the officers' reliance on the warrants was not in good faith, nor is there evidence that the officers' reliance was not reasonable.

8

location of the searches and the items to be seized.  The search warrants in this matter were lawfully issued and there is no requirement for suppression of evidence seized pursuant to those warrants.  Therefore, this Court recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 11), and Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 12), be denied.

## RECOMMENDATION

**IT IS HERERBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 11), be **DENIED**; and

2. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 12), be **DENIED**.

Date: March 6, 2009

*s/Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 20, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the

District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

      Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.